ALLEN, Respondent v. MARTLEY, Appellant

(87 N.W.2d 355)

(File No. 9662. Opinion filed January 14, 1958)
Rehearing denied February 14, 1958.

**Hanley, Costello & Porter,** Rapid City, for Defendant-Appellant.

**H. F. Fellows** and **Lynden D. Levitt,** Rapid City, for Plaintiff-Respondent.

HANSON, J.   This is an action for personal injuries involving a pedestrian-automobile accident.   The issues were submitted to a jury which returned a verdict in favor of plaintiff in the amount of $9,815.95.   The defendant appeals.

The accident occurred October 7, 1955, approximately 15 miles east of Rapid City on U. S. Highway 14-16. Viewing the evidence in the light most favorable to the plaintiff, Wade Allen, it appears he was then 60 years of age and in generally good health. He operated a small blacksmith shop in Rapid City and also had a contract to collect old tires. The plaintiff owned a 1936 model pick-up truck which he used in collecting old tires.

On the day of the accident plaintiff picked up a load of tires in the town of New Underwood. Shortly after noon he started his return trip to Rapid City by driving west on U. S. Highway 14-16. It was a bright sunny day and the asphalt pavement was clear and dry. About 5 miles west of New Underwood Allen stopped to check his load. For this purpose he parked his truck on the right-hand or north side of the highway.   After tying down the tires plaintiff walked back or east of the parked truck about 20 feet to inspect the load.   He was then standing 4 or 5

feet south of the north edge of the pavement. While there he saw an old tire lying in the south ditch about 40 or 50 feet south and east. He decided to add this old tire to his collection.

Before attempting to cross the left lane of traffic plaintiff looked for oncoming cars both to the east and to the west. Seeing none approaching he started walking diagonally across the highway in a southeasterly direction keeping his eyes on the old tire. He did not again look in either direction for approaching cars until he heard the sound of squealing tires. Looking west he saw defendant's car coming toward him at great speed about 8 feet away. The left front fender and windshield struck plaintiff. The point of impact was about on the south edge of the pavement. After the accident plaintiff was found lying on the highway approximately 37½ feet east of the point of impact.

The defendant, Harry F. Martley, was also a resident of Rapid City. He owned a 1954 Oldsmobile sedan which was in good mechanical condition. Shortly before the accident defendant left Rapid City on a business trip driving east on U. S. Highway 14-16. He first observed plaintiff's pick-up truck about a quarter of a mile ahead of him to the east. As he proceeded on defendant lost sight of the truck because of a dip in the road. The dip started approximately 700 feet west of plaintiff's parked truck. It was deep enough so that a person standing at the scene of the accident and looking west could not see a car while it was at the bottom of the dip. Coming out of the dip defendant had a clear and unobstructed view of plaintiff's truck and the scene of the accident for a distance of 700 feet. Defendant admitted he was unable to stop his car when he first observed plaintiff crossing the highway ahead of him. The legal speed limit was 60 miles per hour.

The physical evidence shows defendant's car left the highway at the point of impact and traveled 55 feet before coming to a stop in the fence bordering the south ditch. There were tire or skid marks on the highway for a distance of 117 feet before the point of impact. At the scene of

accident the paved portion of the highway was 25½ feet wide with graveled shoulders two or three feet in width.

Assuming the negligence of defendant the ultimate question is whether a jury might reasonably find the contributory negligence of the plaintiff, if any, was slight and the negligence of the defendant was gross in comparison. Pleinis v. Wilson Storage and Transfer Company, 75 S.D. 397, 66 N.W.2d 68.

Under our comparative negligence statute, SDC Supp. 47.0304-1, where an action is brought to recover damages for injuries to a person or his property caused by the negligence of another, the fact plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff is slight and the negligence of the defendant is gross in comparison. The rule is stated in the case of Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27, 29. "Where the evidence in relation to negligence and contributory negligence is such that reasonable minds might differ as to the existence of slight negligence on the one hand and gross negligence on the other, the question of comparison is for the jury. If, however, the facts are not in dispute or of such a nature that reasonable men could not differ, the standards of conduct are for the court to determine, and not for the jury."

■ The plaintiff had a legal right to cross the highway on foot. In doing so he was required to exercise ordinary care for his own safety. As pointed out in the case of McKeon v. Delbridge, 55 S.D. 579, 226 N.W. 947, 948, 67 A.L.R. 311, "A pedestrian has a right to cross a street diagonally in the middle of the block, subject to the duty of making reasonable use of his senses in order to observe impending danger, and whether he is in the exercise of ordinary care in so doing is usually for the jury."

■ Before attempting to cross the road plaintiff looked in both directions for approaching traffic. Seeing no cars he apparently concluded it was safe for him to walk approximately 20 feet without further observation. It was within the province of the jury to find he was in the exercise of ordinary care under the circumstances. Bock

v. Sellers, 66 S.D. 450, 285 N.W. 437. The jury could further find from the evidence that when plaintiff looked for approaching traffic defendant's car was out of sight in the dip. The jury could also find that when defendant came out of the dip plaintiff was plainly visible walking on the highway 700 feet ahead and if defendant had his car under proper control he could easily have avoided striking plaintiff.

Even though plaintiff was not exercising the standard of care and vigilance for his own safety commensurate with the danger involved such contributory negligence would not necessarily bar recovery under our comparative negligence law. In our opinion reasonable-minded men might differ as to whether the negligence of the plaintiff was slight and the negligence of the defendant gross in comparison and, therefore, that issue was properly submitted to the jury under our comparative negligence law.

The jury was instructed they could award damages to plaintiff for "loss of earning power" reasonably certain to be suffered by him in the future. The defendant excepted to this portion of Instruction 13 for the reason there was no proof of plaintiff's earning capacity or loss of earning power. The defendant contends the jury was thereby allowed to speculate on the amount of such damages.

The proof shows plaintiff was unconscious for seven weeks following the accident. His injuries were severe and required surgery. He was in the hospital over three months. His injuries included a fragmented fracture of the right hip, fracture of the right shoulder, and a fractured pelvis. He suffered considerable pain and according to the medical evidence will continue to suffer pain in the future. There is considerable limitation of motion in plaintiff's shoulder, hand, and leg. The injuries are permanent. Plaintiff cannot walk without the aid of crutches or a cane and has been unable to perform any work since the accident.

At the time of the accident plaintiff was 60 years of age and in good health. He had a life expectancy of 14½ years. He was self-employed as a blacksmith and also had a contract with a rubber company to collect old tires. It

was evident plaintiff had some earning capacity before he was injured and a disposition to work. The record is silent, however, as to the amount of his past ' earnings or earning power.

Loss of earning capacity is one of the natural and necessary consequences of a disabling injury. As an element of general damages it need not be specially pleaded. It differs from loss of earnings which involves a past loss, must be specially pleaded, and is capable of fairly definite and certain proof. Simmons v. Leighton, 60 S.D. 524, 244 N. W. 883. What a person has earned in the past "is an element which may throw light on what he would have been able to earn in the future had his ability to work not been destroyed by the injury. That, however, is not the measure of his loss but only evidence which may aid the jury in determining its extent." Shaw v. Pacific Supply Co-operative, 166 Or. 508, 113 P.2d 627, 628.

The purpose of an award of damages for loss of future earnings is "to compensate for loss of earning capacity as distinguished from loss of actual earnings * * *." Renuart Lumber Yards v. Levine, Fla., 49 So.2d 97, 99. As the Oregon court stated in the case of Shaw v. Pacific Supply Co-operative, 166 Or. 508, 113 P.2d 627, 628, "there are no precise rules by which to measure such a loss in every case,that it can only be approximated, and that the question is peculiarly one for a jury, to be determined in view of the facts proven and in accordance with their common knowledge and experience; though the evidence, of course, must furnish a basis for the determination."

Ordinarily loss of earning capacity is shown by proof of what the party earned before the injury and what he is capable of earning after the injury. Brown v. Sutkowski, 117 Vt. 377, 91 A.2d 556. However, "with respect to loss of earning capacity as distinguished from loss of earnings, past earnings are only one of the factors to be taken into consideration, and other factors are a plaintiff's age, condition, station in life, occupation, health and surroundings * * * and may be determined even in the absence of testimony as to plaintiff's earnings prior to the accident."

Hrabak v. Hummel, D.C., 55 F.Supp. 775, 779, affirmed 3 Cir., 143 F.2d 594, certiorari denied 323 U.S. 724, 65 S.Ct. 57, 89 L.Ed. 582.

The verdict does not reflect the amount of damages, if any, awarded by the jury for loss of earning capacity. A general verdict in the amount of $9,815.95 was returned in favor of plaintiff. Deducting the medical expenses the sum of $6,929.16 remains for general compensatory damages including pain and suffering.

■ In our opinion the evidence furnishes a sufficient basis to sustain any allowance the jury may have included in its verdict for loss of earning capacity. Miller v.Delaware River Transp. Co., 85 N.J.L. 700, 90 A. 288; Johnson v. Howard, 45 Wash.2d 433, 275 P.2d 736. The jury had an opportunity to observe the plaintiff and the extent and nature of his disabling injury. "It needs no evidence to show that a plaintiff in full health and vigor, who has lost an arm or a hand by reason of the negligence of the defendant, has had his earning power greatly impaired; and in such a case a jury would not be limited to nominal damages, although there should be no evidence that he was in the receipt of wages at the time of the injury, but would be authorized to give substantial damages * * * . No testimony is required upon matters which are presumably within the knowledge or observation of all men of common intelligence. 'Juries are in many cases permitted to exercise their own individual judgments as to values upon subjects presumptively within their own knowledge which they have acquired through experience or observation, and the objection that no evidence was presented before them upon such subjects is insufficient to defeat their verdict.' " Lindemann v. San Joaquin Cotton Oil Co., 5 Cal.2d 480, 55 P.2d 870, 877.

We have considered the other assignments of error and find none prejudicial.

The judgment is affirmed.

All the Judges concur.